## CALIFORNIA TOWING CO. v. BENSON LUMBER CO.

### No. 9428.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1940.

---

Carroll Single and Clarke Weigand, both of San Francisco, Cal., and George R. Baird, of San Diego, Cal. (Stanley J. Cook, of San Francisco, Cal., of counsel), for appellant.

L. K. Vermille, Preston B. Plumb, Jr., and Overton, Lyman & Plumb, all of Los Angeles, Cal., and Gerald C. Thomas and Wright, Monroe, Harden & Thomas, all of San Diego, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree denying to appellant, California Towing Company, hereafter called the "Towing Company", owner of the Tug Sunshine, compensation claimed by it from Benson Lumber Company, hereafter called the "Lumber Company", under an agreement to tow the latter's log raft on a voyage from Astoria, Oregon, to San Diego, California.

The agreement provided a payment of $8,500 for the towage of the raft on the agreed voyage. The Sunshine started towing but her engines broke down when but 82 miles on the 900-odd mile voyage to San Diego, and another tug was employed by the Lumber Company.

The Towing Company claims that under the contract it is entitled to be paid the entire $8,500. There is no other liability asserted, there being no articles claiming on quantum meruit. The sole question is whether the $8,500 compensation is the measure of the value of the tug's services, though, through the failure of her power, she was compelled to abandon the raft.

The pertinent provisions of the charter are:

"California Towing Company will furnish to Benson Lumber Company, the tug 'Sunshine', hereafter termed the 'Tug', as customarily equipped by California Towing Company for deep sea towage for use by Benson Lumber Company in towing from one to three log rafts (with or without deck load), termed the 'Tow', * * *:

" * * * and shall pay all of the costs of operation of said tug. Said towage shall commence within ―――― days from the date of this contract.

"Second: The hire to be paid California Towing Company by Benson Lumber Company for the use of said tug shall be the sum of Eighty-five Hundred ($8,500.00) Dollars for the first log raft, and Eight Thousand ($8,000.00) Dollars each for the second and third log rafts, providing that Benson Lumber Company elects to bring down all three rafts during the season of 1937. * * *.

"Third: In the event of loss or stranding of said raft or rafts, or from any other cause (excepting the disablement of tugs, or their equipment), whereby the tug is prevented from *completing this contract,* the hire hereinbefore stated shall be considered earned, and upon arrival of the tug at San Francisco, the time consumed shall be computed at the rate of Three Hundred ($300.00) Dollars per day from the time tug left San Francisco until arrival back at San Francisco, and the same shall be due and payable by Benson Lumber Company. Any advances made by Benson Lumber Company to be deducted therefrom as indicated in second paragraph hereof." (Emphasis supplied)

There is also a provision that the officers and crew while "engaged in such towage shall be deemed under the sole orders and direction" of the Lumber Company and shall be its employees and not those of the Towing Company. The Towing Company contends that the agreement constituted a demise of the tug and we assume, for the purposes of this decision, that during the towage there was such a demise.

The question then is: When, under the compensation provisions of the contract, is the $8,500 hire for furnishing of the tug to the Lumber Company to be deemed earned? The Towing Company contends its contract was completely performed and that the $8,500 was earned when the tug broke down, some 82 miles from Astoria.

We agree with the district court in holding contra. It is apparent from the provisions of paragraph Third of the contract that the completed contract is the towing by the tug to its destination in San Diego. If, from any of the enumerated causes other than the breakdown of the tug, the contract is not completed by a towage to San Diego, a different rate of compensation of $300 per day is to be paid. We construe

section Third to provide that no compensation is to be paid if the failure so to complete the contract is due to the "disablement of the tug." True, the tug would be entitled to no compensation if she broke down but ten miles from San Diego, but this is one of the situations for which no compensation is provided.

The Towing Company cites cases holding that where a ship is demised by charter for a certain period or voyage, her hire is deemed earned for the period or voyage though she break down. None of the charter contracts in these cases is apposite, for none contains such a provision as section Third of the instant contract.

Affirmed.

MATHEWS, Circuit Judge, concurs in the result.